IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JACQUIE ALBRIGHT, Individually, and as
Parent and Next Friend of T                                              PLAINTIFF

V.                          CASE NO. 3:17-CV-3075

MOUNTAIN HOME SCHOOL DISTRICT                                            DEFENDANT

## OPINION AND ORDER

Currently before the Court are Plaintiff Jacquie Albright's Motion for Judgment on the Record (Doc. 25) and Memorandum Brief (Doc. 26) in Support, Defendant Mountain Home School District's ("the District") Response (Doc. 33), and Ms. Albright's Reply (Doc. 36). For the reasons given below, Ms. Albright's Motion is **DENIED**, and her Complaint is **DISMISSED WITH PREJUDICE**.

This case is the latest in a series of lawsuits between Ms. Albright, on behalf of her disabled child, and the District, where her child is enrolled as a student. (Ms. Albright's child will be referred to as "Student" throughout this Opinion and Order.) Of those lawsuits, this is the second one to make it into federal court; the other four all appear to have been resolved at the state administrative level, whether through settlement or dismissal. The previous federal lawsuit ("*Albright I*") was heard in this Court and ultimately resolved on summary judgment in the District's favor. *See Albright I*, 2017 WL 2880853 (W.D. Ark. July 5, 2017). That ruling is currently on appeal in the Eighth Circuit.

This case, as with *Albright I*, involves claims brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* As the Court explained in *Albright I*, the IDEA requires that:

1

> [T]he District must provide [Student] with a free appropriate public education ("FAPE"), *id.* at § 1412(a)(1), which includes special education and related services in conformity with an individualized education program ("IEP"), *id.* at § 1401(9)(D). The IDEA sets out a process by which teachers, school officials, and a child's parents should collaborate to draft an IEP that fits the child's unique needs. *See id.* at § 1414(d)(1)(B).
>
> When a parent disagrees with other members of the IEP team over what the IEP should include, the parties may attempt to resolve the disagreement, either through a "preliminary meeting" or through mediation. *Id.* at §§ 1415(e), (f)(1)(B)(i). If unsuccessful, then the parent may file a complaint with the Arkansas Department of Education to initiate a "due process hearing." *See id.* at § 1415(f)(1)(A). Following the Hearing Officer's decision, the losing party may appeal it by filing a lawsuit in federal court. *See id.* at § 1415(i)(2)(A). And that is what happened here.

*Albright I*, 2017 WL 2880853, at *1.

*Albright I* concerned whether Student was denied a FAPE between November 15, 2013 and October 17, 2014. *See id.* at *2. This Court affirmed the Hearing Officer's decision in *Albright I*, ruling that Student was not denied a FAPE during that time period. *See id.* at *4. The instant case picks up where *Albright I* left off, and concerns the time period from October 18, 2014 through October 7, 2016. Here, as in *Albright I*, Ms. Albright is the appellant, following a finding by the Hearing Officer that Student was not denied a FAPE during the relevant time period.

When a federal district court is asked to review the Hearing Officer's decision, the Court must "review the administrative record, hear additional evidence if requested, and 'basing its decision on the preponderance of the evidence, . . . grant such relief as [it] determines is appropriate.'" *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 803 (8th Cir. 2011) (quoting 20 U.S.C. § 1415(i)(2)(C)) (alterations in original). In so doing, this Court "must independently determine whether the child in question has received a FAPE," while also giving "due weight to agency decision-making" since the

Hearing Officer "had an opportunity to observe the demeanor of the witnesses and because a district court should not substitute its own notions of sound educational policy for those of the school authorities that it reviews." See id. (internal alterations and quotation marks omitted). The centerpiece of a FAPE is the IEP. See Honig v. Doe, 484 U.S. 305, 311 (1988). "When reviewing a school district's compliance with the IDEA, a district court must engage in a two-part inquiry: It must first determine whether the school district followed the procedures set forth in the IDEA," K.E., 647 F.3d at 804, and then it must determine whether the IEP was "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988, 1001 (2017); see also K.E., 647 F.3d at 804. "If these requirements are met, the school district has complied with the obligations imposed by Congress and the courts can require no more." K.E., 647 F.3d at 804 (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982)) (internal alterations omitted). However, even if a school district failed in some manner to follow the procedures set forth in the IDEA, the reviewing court should not set aside the IEP unless "the procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parent's opportunity to participate in the formulation process, or caused a deprivation of educational benefits." See id. at 804–05 (quoting Sch. Bd. of Indep. Sch. Dist. No. 11 v. Renollett, 440 F.3d 1007, 1011 (8th Cir. 2006)) (internal alterations omitted).

Ms. Albright's Brief identifies a litany of alleged procedural violations, which she contends cumulatively amount to a substantive denial of a FAPE for Student. See R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 190 (2d Cir. 2012) ("Multiple procedural violations

3

may cumulatively result in the denial of a FAPE even if the violations considered individually do not."). All of those alleged procedural violations appear to relate in some way or another to the issue of whether Student should have received a new functional behavioral assessment ("FBA") and whether Student's IEP should have included a new behavioral intervention plan ("BIP"), to deal with maladaptive behaviors that Student was exhibiting at school.

The Court would first observe that the District was not required under the IDEA to conduct a new FBA or to include a new BIP in Student's IEP, because Student was never removed from her then-current educational placement for more than ten school days for misbehavior that was a manifestation of her disability, *see* 34 C.F.R. § 300.530(f)(1), and was never placed in an alternative educational placement due to behavior involving weapons, drugs, or the infliction of serious bodily injury on another person, *see* 34 C.F.R. § 300.530(g). Rather, the IEP team was simply required to "*consider* the use of positive behavioral interventions and supports, and other strategies" to address Student's behavior, to the extent that Student's behavior "impede[d] the child's learning or that of others." *See* 20 U.S.C. § 1414(d)(3)(B)(i) (emphasis added). So to the extent that Ms. Albright alleges it was a procedural violation for the District not to conduct a new FBA or develop a BIP, *see, e.g.*, Doc. 26, pp. 16, 18, the Court believes she is incorrect.

Student's IEPs for the 2015–16 and 2016–17 school years stated that Student's behavior was not impeding her learning. *See* AR3045, AR3255.[1] Ms. Albright contends that these statements were incorrect, and that their wrongness constitutes a procedural

---

[1] This Opinion and Order's citations to the administrative record will take the form of "AR[page number]."

violation of the IDEA. See Doc. 26, pp. 14, 20. She bases this allegation on daily observation notes that the District provided her, which documented, among other things, various instances of misbehavior on the part of Student such as throwing things, climbing on equipment, screaming, and banging her head on a table. See id. at 13, 18–19. Thus, she infers the District "was not harvesting data from these notes that could be used to measure progress toward behavior goals," which she says constitutes an additional procedural violation of the IDEA. See id.

But this ignores the fact that prior to development of Student's 2015–16 IEP, Ms. Albright rejected the District's proposal that a Board Certified Behavior Analyst named Susanne Belk conduct an FBA and develop a BIP for Student. See AR3239. A school district "[m]ust obtain informed parental consent . . . prior to conducting any reevaluation of a child with a disability." See 34 C.F.R. § 300.300(c)(1)(i). However, Ms. Albright contends that the District "used Parent's refusal to consent to Belk conducting the FBA as an *excuse* to . . . argue the Parent prevented them from conducting an FBA or approving a BIP they *secretly didn't feel was needed and never intended to do*," and that this too was a procedural violation of the IDEA. See Doc. 26, p. 17 (emphasis in original). But this ignores the fact that the District then went ahead and had Ms. Belk conduct an evaluation and prepare a report anyway, complete with recommendations for behavior management. See AR3151–57. However, Ms. Albright contends that this too was a procedural violation, because she alleges the District did not follow the proper "consent override" procedures by pursuing mediation or filing a due process complaint. See 34 C.F.R. § 300.300(a)(3)(i); Doc. 26, p. 18. Finally, and relatedly, Ms. Albright argues that the District committed a procedural violation of the IDEA by declining to employ "consent

override" procedures to include an FBA and BIP in Student's FAPE over and against Ms. Albright's consent.[2] See Doc. 26, pp. 20–21.

Although the Court initially set a hearing to be held on these matters on November 6, 2018, the Court has determined now that the record is already sufficiently clear to enable it to rule without receiving any further oral argument. The Court finds that none of the alleged procedural violations, except possibly one, are supported by a preponderance of the evidence in the administrative record. Rather, it is very clear from the record that the District regularly provided Ms. Albright notice of IEP meetings, was in nearly constant communication with Ms. Albright about Student's behavioral issues, and that Ms. Albright refused to consent to an FBA proposed by the District. And even if it was a procedural violation for the District to have Ms. Belk eventually conduct an evaluation of Student over Ms. Albright's wishes without first filing a formal due process complaint, the Court finds that this procedural shortcoming made no substantive difference in the end; such a due process complaint surely would have resulted in a ruling favorable to the District on the matter, because "[e]very court to consider the IDEA's reevaluation requirements has

---

[2] It is a rare and perhaps altogether unique occasion for the undersigned to preside over a lawsuit in which a plaintiff complains of a defendant's decision not to sue the plaintiff. In *Albright I* this Court noted the existence of "a long history of bad blood" between these parties, *see* 2017 WL 2880853, at *2, as well as the "profoundly toxic lack of trust" between them, *see id.* at *4. The Court also observed in that case that "[i]t is also undoubtedly true that Ms. Albright disagrees with other members of [Student]'s IEP team about what [Student]'s true academic potential is." *See id.* The Court would echo all of those observations again now. The Court is left with the distinct impression that literally the only way the District could have avoided this lawsuit would have been to turn the IEP team effectively into a team of one—consisting solely of Ms. Albright—and to consent in every single respect, whether material or immaterial, to Ms. Albright's IEP wishes. But that is not what the IDEA requires. Rather, an IEP team must include not only the parents of the child with a disability, but also educators and school officials, along with other individuals, *see* 20 U.S.C. § 1414(d)(1)(B), and "collaboration between IEP Team members" is an explicit goal of the IDEA, *see id.* at § 1414(d)(5)(B)(iv).

concluded if a student's parents want [her] to receive special education under IDEA, they must allow the school itself to reevaluate the student and they cannot force the school to rely solely on an independent evaluation." *G.J. v. Muscogee Cnty. Sch. Dist.*, 668 F.3d 1258, 1263–64 (11th Cir. 2012). Thus, the Court finds by a preponderance of the evidence that any such procedural inadequacy did not "compromise[] the pupil's right to an appropriate education, seriously hamper[] the parent's opportunity to participate in the [IEP] formulation process, or cause[] a deprivation of educational benefits." *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 804–05 (8th Cir. 2011).

The Court further finds by a preponderance of the evidence that Student's IEPs during the relevant period were "reasonably calculated to enable [Student] to make progress appropriate in light of the child's circumstances," *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017), especially given the evidence in the record that Student "made great progress . . . in the areas of syntax, grammar, play and [leisure], social interaction, group instruction, classroom routines, [generalized] responding, reading and math," *see* AR3296, and in light of Ms. Belk's testimony about the social skills training that Student received during the relevant period, *see* AR 1348–54, and her report's recommendation that Student "[c]ontinue with [her] current behavior management plan," *see* AR 3156.

**IT IS THEREFORE ORDERED** that Plaintiff Jacquie Albright's Motion for Judgment on the Record (Doc. 25) is **DENIED**, and her Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**. Judgment will enter contemporaneously with this Order.

**IT IS SO ORDERED** on this 5th day of November, 2018.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE